UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DYLAN JAMES KAMMERAAD,
#862329,

     Petitioner,

v.

SHERMAN CAMPBELL,

     Respondent.

_____

Case No. 1:16-cv-00349-PLM-PJG

Honorable Paul L. Maloney

## REPORT AND RECOMMENDATION

   This is a habeas corpus proceeding brought *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner's criminal convictions stem from his actions on April 29, 2012. On that date, petitioner was at a dance hall, and he punched Keenan Matlock in the face. Police arrived at the scene and subsequently arrested petitioner after petitioner was identified as the person who committed the assault. Petitioner was then transported to the county jail for booking where he was evasive and uncooperative with police officers by refusing to give police his full name, answer other questions, and have his fingerprints taken. Petitioner "went to the floor" and kicked and flailed his arms at the police officers. After petitioner was subdued, the officers carried him to the jail's segregation cell. When the officers searched petitioner, he once again resisted and kicked at the officers. The officers removed a small folding knife on a lanyard that had been around the petitioner's neck. (*See* ECF No. 13-11, PageID.748).

On December 12, 2012, an Allegan County Circuit Court jury found petitioner guilty of one count of aggravated assault, MICH. COMP. LAWS § 750.81a(1), three counts of resisting, obstructing, or assaulting a police officer, MICH. COMP. LAWS § 750.81d(1), two counts of assault of a jail employee MICH. COMP. LAWS § 750.197c(1), and one count of refusing or resisting the collection of biometric data (fingerprints), MICH. COMP. LAWS § 28.243a. Petitioner was also held in contempt of court. On January 28, 2013, Petitioner received concurrent sentences of one year in jail for the aggravated assault conviction, 275 days in jail for the convictions of three counts of resisting, obstructing, or assaulting a police officer, 19 to 60 months' imprisonment for the convictions of two counts of assaulting a jail employee, and 90 days in jail for the conviction related to petitioner's refusal to provide fingerprints. Petitioner received credit on all these sentences for the 275 days that he had spent in jail before sentencing. (ECF No. 13-11, PageID.780-81). In addition, petitioner received a consecutive sentence of 30 days in jail to be served at the completion of his jail term for his contempt conviction arising from his conduct during the sentencing hearing. (ECF No. 13-11, PageID.781; *see also* ECF No. 13-10, PageID.736, 742-45).

After unsuccessful attempts to overturn his conviction in state court, petitioner filed this habeas corpus petition.[1] Petitioner seeks federal habeas corpus relief on the following grounds:

---

[1] On June 4, 2017, petitioner sent a letter to the court indicating that he had been released from custody. (ECF No. 26). On April 27, 2017, he was released from the Michigan Department of Corrections to the Allegan County Jail to serve his 30-day sentence for contempt. Petitioner served that sentence and was released. (*Id.*, PageID.1117). Petitioner satisfied section 2254's "in custody" requirement because

I.      Trial counsel was ineffective when he performed none of the responsibilities required by the Constitution during petitioner's trial.

II.     The trial court improperly removed petitioner from the courtroom during his trial. Petitioner's appearance, while bothersome, did not disrupt the courtroom proceedings.

III.    Trial counsel and the state circuit court erred by not seeking a competency evaluation for petitioner before proceeding with the trial.

IV.    Petitioner was convicted of amended counts that were meant to be alternative counts; thus, his convictions for multiple offenses that stem from the same conduct violated his constitutional right against double jeopardy and there was also insufficient evidence of some of the resisting or obstructing charges.

V.     The trial court's summary criminal contempt finding violated petitioner's fundamental and statutory rights to free speech and allocution.

(Am. Pet. at 6-10, 15, ECF No. 5, PageID.94-99, 103).[2]

Respondent has filed an answer to the amended petition. (Answer, ECF No. 12). Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit. (*Id.*, PageID.273-323). In addition, respondent further argues that Ground IV should be denied because petitioner's claim is barred by procedural default for inadequately briefing the claim, and petitioner has not alleged or established good cause to excuse that default and actual prejudice or that failure

_____

he was being held in state custody on his convictions for two counts of assaulting a prison employee and contempt on April 5, 2016, when he filed his federal habeas corpus petition. *See Spencer v. Kemma,* 523 U.S. 1, 7 (1998); *see also McVeigh v. Smith,* 872 F.2d 725, 727 (6th Cir. 1989).

[2] Petitioner's invocation of Michigan's constitution and laws as grounds for federal habeas corpus relief are not recognized herein because federal habeas corpus relief is available "only on the ground that [petitioner] is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a).

to review that claim would result in a fundamental miscarriage of justice. (*Id.*, PageID.305-317, 323).

Judge Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state court record, I conclude petitioner has not established grounds for federal habeas corpus relief. I recommend that the petition be denied on the merits.[3]

## <u>Standard of Review</u>

This matter is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 562 U.S. 594, 597 (2011) (*per curiam*); *Renrico v. Lett*, 559 U.S. 766, 773 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings

---

[3] Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

[] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell*, 535 U.S. at 693-94. It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court

unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Davis v. Ayala*, 135 S. Ct. at 2198.

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods,* 135 S. Ct. at 1377 (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254(d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question on habeas review, then it does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt*, 134 S. Ct. at 15.

## Proposed Findings of Facts

### A.    District Court Proceedings

The Michigan Court of Appeals noted that, during proceedings in the 57th district court, petitioner had "refused to sign various standard district court forms and that he refused to attend a 'pre-exam' conference." *People v. Kammeraad*, 307 Mich. App. 98, 101, 858 N.W.2d 490, 494 (Mich. Ct. App. 2014); (*See* ECF No. 6-2, PageID.195).

On May 15, 2012, petitioner received a preliminary examination. (ECF No. 13-3). Petitioner addressed the court as follows:

> I take exception. I refuse any and all court appointed attorneys and their services. I refuse any and all trials. I refuse any and all juries. I refuse any and all court services. I take exception to this process. And I take exception to these unlawful proceedings. Have the prosecution swear in and certify the false charges, the fake charges they are holding…

(*Id.* at PageID.356). Petitioner also stated that he was present "under duress of imprisonment, taken by force, and violent threat" and that he was "without an LEP[4] interpreter" and that he "d[id] not understand." (*Id.* at PageID.360). Petitioner responded in similar ways to nearly every statement made and question asked by the court, sometimes interrupting the court in the process of making these statements.

Eventually, Judge William Baillargeon determined that it was necessary to have petitioner removed to the bailiff's office where petitioner could view and listen to the preliminary examination. (*Id.* at PageID.360-61). When petitioner was brought back into the courtroom and asked whether he had any questions for the witness, petitioner blurted out the non-responsive statement: "I take exception to that." (*Id.* at PageID.366). At the conclusion of the preliminary examination, Judge Baillargeon held that every charge was supported by probable cause and bound over petitioner for trial in Allegan County Circuit Court on all charges. (*Id.* at PageID.367).

---

[4] The Michigan Court of Appeals noted that "LEP" apparently stood for "Limited English Proficiency." (ECF No. 6-2, PageID.197).

### B.    Circuit Court Proceedings

#### 1.    Circuit Court Arraignment

On June 5, 2012, petitioner was arraigned in Allegan County Circuit Court. (ECF No. 13-4).  Petitioner continued in the same manner and responded in similar ways as he did at the preliminary examination.  He again refused any and all court appointed attorneys, court services, and jury services.  Petitioner further "took exception," stating that he was without an LEP interpreter, and he "refused to become a party to and join in the acts of entrapment, extortion, exploitation of vulnerable victims, [coercion] and human trafficking and human bondage."  (*Id.* at PageID.371-74).  When Judge Kevin Cronin asked petitioner how he pleaded and if he wished to be heard with regard to a bond, petitioner elected to "take exception" to the proceedings and argue that they constituted an "unlawful non-Michigan Constitutional Pact Code."  (*Id.* at PageID.375-76).  Judge Cronin entered a non-guilty plea because petitioner was essentially refusing to communicate with the court. (*Id.* at PageID.375).

#### 2.    Circuit Court Pretrial Motion Hearings

In two hearings of note before Judge Cronin, petitioner appeared naked from the waist up in a wheelchair, though there appeared to be no physical or medical necessity for the wheelchair.  (ECF No. 13-5 at PageID.384-85).  In the first hearing to amend felony information, petitioner again took exception when asked if he waived his right to defense counsel or refused to be represented by counsel, and he further took exception when informed of the choice and procedures for petitioner to represent

himself. Judge Cronin ultimately appointed an attorney to represent petitioner because it was unclear if petitioner was waiving his right to counsel by taking exception and by being uncooperative and disruptive. (ECF No. 13-5 at PageID.384-88). Following the court's identification of defense counsel, petitioner again took exception, stating that he "did not associate with anyone that advocates the obnoxious doctrine of criminal syndicalism," and asserting that "no one had his authority to speak or do anything on [his] behalf." (*Id.* at PageID.388-91).

In a hearing on a motion to further amend the information and appointed counsel's motion to withdraw as petitioner's attorney,[5] Judge Cronin again noted that petitioner appeared in court naked from the waist up and in a wheelchair. (ECF No. 13-6 at PageID.395-97). Before Judge Cronin attempted to ask petitioner the questions required for waiver of counsel or the exercise of the right of self-representation, the judge noted how petitioner was setting himself up for a predicament of his own manufacture:

> This is the second hearing in a row where the defendant comes to the court and his behavior seems to be designed to disrupt and burden the Court. He disrupts it by appearing here naked from the waist up, and he appears in a blanket and obviously in handcuffs, visible handcuffs. That's because he won't dress and he won't walk here, which he has every capability to do. So I foresee that the Court is going to consider entering an order excluding him from the courtroom at future hearings, especially at a future hearing involving members of a prospective jury to decide his criminal culpability for the underlying offenses.

---

[5] Judge Cronin noted that petitioner's trial had originally been set for a week before this September 25, 2012, hearing, but the trial had been adjourned at the request of petitioner's attorney because petitioner would not cooperate. (ECF No. 13-6, PageID.396).

(ECF No. 13-6 at PageID.402). Petitioner's incorrigible behavior created the danger that he would have to be excluded from the courtroom and essentially deprive himself of a meaningful participatory role in his trial. (*Id.* at PageID.403). If petitioner failed to signal the court of his intention to walk under his own power and wear clothing or continue to appear in improper attire, he would be escorted to the jury assembly room across the hall from the courtroom, watch the proceedings via the video connection, and have appropriate opportunities to consult with petitioner's appointed attorney, Matthew Antkoviak. (*Id.* at PageID.465).

Judge Cronin informed petitioner of the requirements to waive appointed counsel and explained the formal waiver standard. Petitioner did not respond to the formal waiver of defense counsel but stated that he took exception, was not the defendant, Mr. Kammeraad, and was not a "patron of nor subscriber to the legal arts," yet was not qualified to represent himself. (*Id.* at PageID.403-416). When Judge Cronin asked petitioner whether he wanted to give the Court assurance that he would not disrupt proceedings and whether he was planning to wear clothes at trial, petitioner's responses were, "I take exception." (*Id.* at PageID.416-17). Judge Cronin found that petitioner "most certainly intend[ed] to and ha[d] amply demonstrated his intention with his behavior to disrupt and burden the court and perhaps to inconvenience the court and distract the jury from the merits of this case by refusing to dress and walk into the courtroom and respond to direct questions." The judge ordered that petitioner would be required to appear before the jury in appropriate

clothing and with his restraints concealed in order to avoid the possibility of the jury being prejudiced in petitioner's favor or against him.  (*Id.* at PageID.418).

Attorney Antkoviak asked the court to allow him to withdraw as petitioner's attorney based on petitioner's statements in court that counsel was not his attorney and did not have authority to speak on his behalf.  Additionally, defense counsel believed he was unable to prepare a defense based on petitioner's lack of cooperation and communication.  (*Id.* at PageID.419-33).  Judge Cronin denied Attorney Antkoviak's motion to withdraw and his motion for petitioner to represent himself. The court decided it was necessary to have an attorney representing petitioner given that petitioner was at risk of being excluded from the trial because of his disruptive behavior and because the court was unable to obtain a clear and unequivocal waiver of counsel from petitioner.  (*Id.* at PageID.456).  Petitioner never stated that he wanted to exercise his right to represent himself.  "He in fact to the contrary s[aid] he's not competent to do so."  (*Id.*).

### 3.   Circuit Court Pretrial Conference

On October 26, 2012, the circuit court judge conducted a pretrial conference without the presence of petitioner, though petitioner's court appointed attorney was present and a video connection was set up so that petitioner could participate from jail.  (ECF No. 13-7).  Petitioner refused to leave his cell to view the pretrial conference.  (*Id.* at PageID.472, 500-03).  The judge noted petitioner's right to be present at the then upcoming trial was in jeopardy based on his conduct and refusal to cooperate with the court.  The judge also informed petitioner's counsel that he was

to zealously defend petitioner as he would any other client "even if [petitioner] instructs [defense counsel] not to take action on his behalf," notwithstanding petitioner's lack of cooperation and communication. (*Id.* at PageID.478-97).

### 4. Circuit Court Trial

Petitioner's trial began on December 11, 2012, and it concluded on December 12, 2012, with the jury finding petitioner guilty of aggravated assault, three counts of resisting, obstructing or assaulting a police officer, two counts of assault of a jail employee, and one count of refusing or resisting the collection of biometric data. (ECF No. 13-8 and 13-9). At the beginning of the trial before the circuit court, the court noted that petitioner was once again before the court naked from the waist up, in a wheelchair, and handcuffed, despite the court warning petitioner that it was improper to appear as such. (ECF No. 13-8 at PageID.507-08). After the court asked petitioner if he would make any assurance of his willingness to appear in court dressed appropriately and behaving in a non-disruptive manner, petitioner responded by asserting that he took exception, did not agree to participate in the criminal proceedings in the circuit court forum and venue, was not authorized to practice law, and was not qualified to represent himself. (*Id.* at PageID.508). He did not want a court appointed attorney or services, and he insisted that the court proceedings were a scam. Petitioner concluded his tirade against the presiding judge and his actions as follows: "I will never join in your criminal activities. I demand immediate unconditional discharge right now. Do you understand me?" (*Id.* at PageID.510).

When Judge Cronin advised petitioner that his arguments were rejected, his demand for immediate release was denied, and that the trial was "going to begin," the following exchange occurred:

> MR. KAMMERAAD: I take exception.  I'd like to be removed.
>
> THE COURT: Okay.  Well…
>
> MR. KAMMERAAD: I take exception.  I refuse your jury services, I refuse your jury trial, I will not take part.
>
> THE COURT: Do you want to represent yourself in this trial?
>
> MR. KAMMERAAD: I take exception.
>
> THE COURT: If you are not Dylan Kammeraad who are you?
>
> MR. KAMMERAAD: I take exception.

(*Id.* at PageID.510-11).  The court removed the petitioner from the courtroom to a separate room with an electronic connection to the courtroom.  (*Id.* at PageID.511).

Petitioner's attorney supplemented his motion to withdraw based on his client's most recent statements and actions.  (*Id.* at PageID.511-18).  Judge Cronin denied the motion.  Petitioner "had not clearly and unequivocally waived the right to counsel[.]"  (*Id.* at PageID.518).  Petitioner had never stated that he wanted to exercise his right of self-representation.  (*Id.* at PageID.518-19, 522).  In addition, the judge reiterated that petitioner had been informed that there were civilian clothes available for him to wear.  He continued to refuse to dress and refused to walk under his own power.  Judge Cronin explained that if petitioner wanted to abandon his disruptive behavior, he would be welcome to join the trial in the courtroom.  The judge explained the arrangements made for petitioner if he elected to exercise his right to testify.  (*Id.* at PageID.520-21).  Before instructing the bailiff to bring the prospective

-14-

jurors, Judge Cronin made certain that petitioner was situated in a location allowing him to communicate with counsel if he desired such communication. (*Id.* at PageID.531).

The prosecutor presented testimony and other evidence in support of the charges against petitioner. Keenan Matlock testified that in the early morning hours of April 28, 2012, he had been at the Circola Dance Hall in Pullman, Allegan County, Michigan. Mr. Matlock testified that he had been hit and sustained a fractured nose, concussion, and a head laceration requiring multiple staples. (*Id.* at PageID.609-16). Sergeant Mike Brown testified about his arrival on the scene and identification of petitioner as the suspect. Petitioner admitted hitting the victim in the face. Petitioner also related that he had mixed martial arts training and was not backing down from anyone. Sergeant Brown arrested petitioner and transported him to Allegan County jail. (*Id.* at PageID.621-32). Sergeant Brown and Deputies Josh Cole and James Miller testified regarding petitioner's resistance when an attempt was made to take his fingerprints and how petitioner kicked at them during the process of securing petitioner in the jail's segregation cell. (*Id.* at PageID.635-65).

Defense counsel left to confer with petitioner multiple times throughout the trial. Petitioner elected not to communicate with Attorney Antkoviak. (*Id.* at PageID.609, 612, 618, 641-42, 658-59, 667, 671-75). Defense counsel declined to give an opening statement, cross-examine the state's witnesses, present any evidence, present a closing argument, or object to jury instructions. (*Id.* at PageID.609, 612,

616, 642, 645, 659, 667, 670-75, 687, 706). On December 12, 2012, the jury returned its verdict, finding petitioner guilty on all charges. (ECF No. 13-9, PageID.726-27).

On January 28, 2013, Judge Cronin conducted a sentencing hearing (Sentencing Transcript, ECF No. 13-10). Judge Cronin noted at the outset of the sentencing hearing that petitioner was represented by appointed counsel. Petitioner, as at trial, was refusing to step forward under his own power and refused to dress appropriately. Petitioner was in a wheelchair, manacled, and undressed from the waist up. Judge Cronin sentenced petitioner to one year in jail for the aggravated assault conviction, 275 days in jail for the convictions on the three counts of resisting, obstructing, or assaulting a police officer, 19 to 60 months' imprisonment for the convictions on the two counts of assaulting a jail employee, and 90 days in jail for the conviction related to the petitioner's refusal to provide fingerprints. The Judge Cronin also found petitioner to be in contempt of court during the sentencing hearing with an additional sentence of 30 days in jail when he appeared half-clothed and in a wheelchair and made similar disruptive statements in court. (*Id.*; *see also* ECF No. 13-11, PageID.780-81).

## C.    Subsequent Proceedings

Petitioner pursued a direct appeal in the Michigan Court of Appeals. He raised the same issues on direct appeal that he raises in the instant federal habeas corpus petition. (ECF No. 6-1, PageID.162-63). The Michigan Court of Appeals found that all petitioner's claims lacked merit. It vacated one of petitioner's convictions of resisting, obstructing, or assaulting an officer "on the basis of the prosecution's

concession that there was insufficient evidence to sustain the conviction." (ECF No. 6-2 at PageID.195, 225).

Petitioner filed an application for leave to appeal to Michigan's highest court based on the same issues rejected by the Michigan Court of Appeals. (Michigan Supreme Ct. Order, ECF No. 6-3). On April 28, 2015, the Michigan Supreme Court denied review. (*Id.*).

On April 5, 2016, petitioner filed his petition for federal habeas corpus relief. (ECF No. 1). On May 16, 2016, petitioner filed his amended petition. (ECF No. 5).

## <u>Discussion</u>

## I.      **Constitutional Right to Counsel**

In Ground I, petitioner claims ineffective assistance of counsel in violation of his Sixth Amendment rights. (Am. Pet., at 6, ECF No. 5, PageID.94; *see also* Petitioner's Brief at 6-14, ECF No. 6 PageID.124-32). Petitioner argues that his trial counsel did not raise objections, investigate petitioner's case, question witnesses, or argue to the jury. (Petitioner's Brief, ECF No. 6, PageID.128; s*ee also* (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.205). Petitioner also argues that the presumed prejudice rule, as articulated in *United States v. Cronic*, should be controlling such that the prejudice element from the *Strickland* test for ineffective assistance of counsel does not need to be shown in cases where the "trial process [has lost] its character as a confrontation between adversaries." *United States v. Cronic*,

466 U.S. 648 (1984); *Strickland v. Washington*, 466 U.S. 668 (1984); (Pet. Brief at 6, ECF No. 6, PageID.124).

In *Strickland*, the Supreme Court established a two-part test to decide ineffective assistance of counsel claims. *Strickland*, 466 U.S. 668 (1984). To establish an ineffective assistance of counsel claim, the petitioner must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id*. at 689. In order for the petitioner to fulfill the prejudice requirement, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The court must be highly deferential to counsel's conduct, bearing in mind the presumption that counsel's actions constitute a sound trial strategy that falls within "the wide range of reasonable professional assistance." *Id*. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

However, in *United States v. Cronic*, the Supreme Court described the "presumption of prejudice" principle in cases where a petitioner was constitutionally entitled to counsel, had not waived or forfeited that right, and where the petitioner's counsel had failed to subject the case to any meaningful adversarial testing. *Cronic*, 466 U.S. 648. The Court held that the right to effective assistance of counsel is the right for the prosecution's case to survive the crucible of meaningful adversarial testing; if the case loses its character as a confrontation between adversaries, the constitutional right to counsel is violated. *Id*. at 656-57. While prejudice generally

must be established to show deficient performance by counsel, there are certain situations in which prejudice is presumed because the costs of litigating the issue outweigh the likelihood that prejudice did not occur. Examples of cases in which prejudice is presumed include complete denial of counsel and when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing...which makes the adversary process itself presumptively unreliable." *Id.* at 659.

Presumed prejudice under *Cronic* may be undermined, however, if the petitioner is not entitled to the constitutional right to counsel by forfeiture of that right. (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.211). Even if a defendant does not formally waive his right to counsel, a defendant still may not be entitled to counsel if he forfeits counsel's representation. Forfeiture of counsel is a novel issue, which the United States Supreme Court has not specifically addressed in any of its holdings.[6] *See Howell v. Rubitschun,* No. 04-cv-71975-dt, 2005 WL 2319012 at *5

---

[6] Though the Supreme Court has not addressed the issue of forfeiture of counsel, other circuits have adopted the doctrine and have distinguished forfeiture situations in which the defendant refuses to both acknowledge and relinquish the right to counsel and situations in which the defendant forfeits his right by his conduct, including dilatory tactics and misbehavior in the courtroom. *See United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995) (describing waiver as "an intentional and voluntary relinquishment of a known right", forfeiture as "the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right", and waiver by conduct as dilatory tactics or misconduct, even if the defendant objects to proceeding *pro se*, after the court has warned the defendant that he will lose counsel if he continues to engage in such behavior); *United States v. McLeod,* 53 F.3d 322, 325 (11th Cir. 1995) (explaining that a defendant may forfeit his rights by virtue of his actions). *See also Gilchrist v. O'Keefe*, 260 F.3d 87, 97-100 (2d Cir. 2001); *Forster v. Worthington*, 2007 WL 2471800 (M.D. Tenn. 2007) (citing *United States v. Fazzini*, 871 F.2d 635, 642 (7th Cir. 1989); *Richardson v. Lucas*, 741 F.2d 753, 756 (5th Cir. 1984); *United States v. Leavitt*, 608F.2d 1290, 1292 (9th Cir. 1979)).

(E.D. Mich. Sept. 20, 2005) (collecting cases). "Clearly established law," as the basis for habeas corpus review, signifies the holdings, as opposed to the dicta, of the United States Supreme Court." *Kelly v. Lafler,* No. 1:10-cv-661, 2016 WL 4500790 at *8 (W.D. Mich. Aug. 29, 2016); 28 U.S.C. § 2254(d)(1); *see also Howes v. Fields*, 565 U.S. 499, 505 (2012). Lower court precedent does not suffice. *Kelly,* 2016 WL 4500790 at *8 (citing *Parker v. Matthews,* 567 U.S. 37, 49 (2012); *Premo v. Moore,* 562 U.S. 115, 127 (2011)). "Novelty alone – at least insofar as it renders the relevant rule less than 'clearly established' – provides a reason to reject it under AEDPA." *Premo,* 562 U.S. at 127.

Here, the Michigan Court of Appeals rejected petitioner's Sixth Amendment claim based on *United States v. Cronic* because petitioner had forfeited his right to counsel. (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.211-12) (citing *Cronic*, 466 U.S. at 653-59). In its analysis, the Court of Appeals assumed that defense counsel failed entirely to subject the prosecution's case to any meaningful adversarial testing (*see* ECF No. 6-2, PageID.211), but ultimately held that petitioner forfeited his constitutional rights to counsel and to self-representation:

> In this opinion, we hold that defendant, being competent, forfeited his constitutional rights to counsel, self-representation, and to be present in the courtroom during trial, given the severity of his misconduct and his absolute refusal to participate in any manner in the proceedings… And he cannot now complain that counsel's performance was deficient for failing to adequately defend against the prosecution's case, considering it was always defendant's expressed wish not to present any type of defense to the charges… This case presented a unique situation in which a defendant in a criminal prosecution indisputably and defiantly refused to participate in the trial and other judicial proceedings, indisputably and defiantly refused to accept the services of appointed counsel or

communicate with counsel, regardless of counsel's identity, indisputably and defiantly refused to engage in self-representation, indisputably and defiantly refused to promise not to be disruptive during trial, and indisputably and defiantly refused to remain in the courtroom for his jury trial. Under those circumstances…defendant's constitutional protections were forfeited and there was no constitutional obligation to impose a court-appointed attorney upon the unwilling defendant. If defendant wished to present no defense or challenge to the criminal charges and simply allow the prosecution to present its case-in-chief absent counsel or defendant's presence in the courtroom, whether for purposes of ideology, protestation, or otherwise, he was free to proceed without any offense to his state and federal constitutional rights to counsel or self-representation. By appointed counsel's assumed failure to subject the prosecution's case to meaningful adversarial testing, defendant received exactly what he desired, and we refuse to reward defendant with a new trial on an alleged constitutional deficiency that was of defendant's own making.

(ECF No. 6-2, PageID.195, 212; ECF No. 13-11, PageID.747, 764).

Petitioner cites three United States Supreme Court Cases to support his claim of a violation of his right to counsel, none of which support his argument: *Cronic*, 466 U.S. 658; *Illinois v. Allen*, 397 U.S. 337, 339-340 (1970); and *Faretta*, 422 U.S. 806. (Pet. Brief, ECF No. 6, PageID.124, 126, 132). In *United States v. Cronic*, the Supreme Court held that certain circumstances, such as complete denial of counsel and when defense counsel fails to subject the prosecution's case to adversarial testing, make the adversary process itself presumptively unreliable. 466 U.S. 658. However, circumstances of presumed prejudice do not weigh on the inquiry of whether the defendant was entitled to the assistance of counsel and if that entitlement was waived or forfeited.

In *Illinois v. Allen*, the Court addresses the right to confrontation as articulated in the Sixth Amendment and held that a defendant can lose his right to be present at trial if a defendant continues his disruptive behavior despite being warned by the judge that he will be removed if the behavior continues. 397 U.S. 337. In *Faretta v. California*, the Court held that the Sixth Amendment, as made applicable to the States by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself *without* counsel when he voluntarily and intelligently elects to do so. 422 U.S. 806. None of the cases invoked by petitioner addressed the forfeiture issue and the circumstances manufactured by petitioner.

The Supreme Court has not adopted nor rejected the forfeiture of counsel doctrine. *See White v. Woodall*, 134 S. Ct. at 1702 (explaining that the only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings of Supreme Court decisions). This Court notes that petitioner cites federal and state court decisions other than United States Supreme Court cases to support his argument. (Am. Pet., PageID.125, 128-30). While petitioner uses the facts of these cases to analogize and distinguish petitioner's case with the cited case law, petitioner's reliance on these cases is misguided because Supreme Court holdings are the only source of clearly established federal law. *White v. Woodall*, 134 S. Ct. at 1702.

Additionally, the Michigan Court of Appeals decision does not contradict the standards articulated for the right to counsel and ineffective assistance of counsel,

nor is the adoption of forfeiture of counsel doctrine contrary to those standards and the Sixth Amendment. *See Strickland*, 466 U.S. 668; *Cronic*, 466 U.S. 658. *See generally Woods*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted). Therefore, the Michigan Court of Appeals decision is not contrary to or an unreasonable application of clearly established federal law.

Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting petitioner's Sixth Amendment claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §2254(d)(1); *see White v. Wheeler*, 134 S. Ct. at 460; *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. at 1702. Accordingly, I find that Ground I does not provide a basis for granting petitioner's request for federal habeas corpus relief.

## II.     Constitutional Right to be Present at Trial

In Ground II, petitioner argues that the Michigan Court of Appeals erred in its assessment of petitioner's removal from the courtroom during his trial in violation of his Sixth Amendment right to be present during trial. (Am. Pet. at 7, ECF No. 5, PageID.95; *see also* Pet. Brief at 15-19, ECF No. 6, PageID.133-37).

Petitioner cites three Supreme Court cases in support of his argument: *Snyder v. Massachusetts*, 291 U.S. 97 (1934); *Faretta v. California*, 422 U.S. 806 (1975); and *Illinois v. Allen*, 397 U.S. 337 (1970)). (Pet. Brief at 15, ECF No. 6, PageID.133). In *Snyder*, the Supreme Court held that the viewing of a crime scene in a prosecution for murder in the absence of the defendant was not a denial of *due process* under the *Fourteenth Amendment*. *Snyder*, 291 U.S. 97 (emphasis supplied). While the case does support the argument that the Sixth Amendment assures the defendant's right to confront one's accusers and cross-examine them fact to face in court, the facts and holding of this case are based on an appeal of a murder conviction for violation of due process, which are not applicable to the case at bar. *Snyder*, 291 U.S. at 106.

Waiver of the defendant's right to be present at his trial can only be valid if the defendant himself knowingly, intelligently, and voluntarily waives that right. *Faretta*, 422 U.S. at 814. A defendant may lose his right to be present during trial by his conduct, particularly that which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial. *Illinois v. Allen*, 397 U.S. at 338, 343. The court must "indulge every reasonable presumption against the loss of constitutional rights", and a defendant can reclaim the right "as soon as [he] is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.* at 343. The Court went on to discuss the importance of the courts in the justice system:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary

standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Id.* at 343.

The Michigan Court of Appeals determined that petitioner had not waived his right to be present at trial because the record was silent as to whether the defendant was explicitly apprised of his constitutional right to be present, though the Court of Appeals notes that it was implicitly clear through the circuit court's warnings and efforts that the defendant had this right. (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.206-07).

The Michigan Court of Appeals also found that both petitioner's conduct and his appearance disrupted the court despite the circuit court's efforts to cooperate with petitioner. Thus, petitioner lost his right to be present, with the stipulation that he could return upon proper behavior and dress. The Court of Appeals upheld Judge Cronin's conclusion that petitioner's behavior was inappropriate, defiant, and disorderly and that it would continue once the trial began. (ECF No. 6-2, PageID.208-09). This finding is supported by the record. While the Court of Appeals does not explicitly state that petitioner's conduct and appearance made it exceedingly difficult or wholly impossible to carry on the trial, the affirmation of the circuit's removal of the petitioner implied that it was difficult or impossible to carry on the trial. This is not an unreasonable determination of the facts given in the Court of Appeals and circuit court records, especially in light of the circuit court's conclusion that the petitioner's behavior would continue and the petitioner could have returned should

he have been cooperative and respected the court.[7]  *Allen*, 397 U.S. at 338; (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.208-09).  The decision of the Michigan Court of Appeals rejecting Ground II easily withstands scrutiny under deferential AEDPA standards.  *See* 28 U.S.C. § 2254(d).

Accordingly, I find that Ground II does not provide a basis for granting petitioner's request for federal habeas corpus relief.

## III.    Competency to Stand Trial

In Ground III, petitioner argues that the Michigan Court of Appeals erred in its review of the circuit court's failure to order a competency examination for petitioner and in its determination that defense counsel was not ineffective in failing to seek a competency examination in violation of his Fifth Amendment due process right to a fair trial, as incorporated against the states through the Fourteenth Amendment.[8]  (Am. Pet. at 9, ECF No. 5, PageID.97; Pet. Brief at 20-24, ECF No. 6, PageID.138-42).

---

[7] Petitioner argues that his conduct and appearance did not rise to the disruptive, threatening, and abusive conduct of the defendant in *Allen*.  However, the Michigan Court of Appeals found that petitioner's appearance without a shirt and in a wheelchair despite lack of need, repeated interruptions of the court, refusal to answer questions asked of him by the court, and disrespect of the judge and court system were sufficiently disorderly and disruptive that the circuit court's removal of the petitioner was justified.  (Am. Pet., ECF. No. 6, PageID.133); (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.208-09).

[8] The Court notes that petitioner asserted a violation of the "Due Process Clause of the Sixth Amendment, which prohibits the trying of an otherwise incompetent defendant," though the Court takes the liberty to correct the claim as a violation of petitioner's due process claim according to the Fifth Amendment guarantee. (Am. Pet., ECF No. 6, PageID.138).

A defendant may not be tried if he is incompetent. *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). "The standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (citing *Dusky v. United States*, 271 F.2d 386 (8th Cir. 1959), *rev'd* 362 U.S. 402 (1960)) (internal quotation marks omitted). The conviction of a defendant while he is incompetent violates his due process rights. *Pate*, 383 U.S. at 378.

The standard for a reviewing court when determining whether a defendant was competent to stand trial is if a reasonable judge, situated as was the trial judge, should have experienced a "bona fide doubt" as to the defendant's competency. *Drope v. Missouri*, 420 U.S. 162, 173 (1975) (cited by *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004)). A trial court's determination of competency is a factual finding, which is presumed to be correct upon habeas corpus review unless rebutted by clear and convincing evidence. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); 28 U.S.C. § 2254(e)(1).

Petitioner cites *Dusky v. United States*, 271 F.2d 386 (8th Cir. 1959), *rev'd* 362 U.S. 402 (1960), in support of his claim, stating the standard for competency – "a defendant must have a rational and factual understanding of the proceedings and a sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding to stand trial.' " (Am. Pet., ECF No. 6, PageID.138); *See also Drope*, 420 U.S. at 172 ("[The] test of incompetence [] seeks to ascertain whether a

criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.' "). Petitioner also cites Michigan statutes that establish competency standards and rights, violations of which are do not provide a basis for federal habeas corpus relief. *See* 28 U.S.C. §2254(a).

In *Dusky*, the Supreme Court reversed and remanded a case in which a defendant directly appealed his conviction to determine the defendant's competency to stand trial because of ambiguities regarding the legal significance of the psychiatric testimony. *Dusky*, 271 F.2d 386 (8th Cir. 1959), *rev'd* 362 U.S. 402. The defendant's attorney raised the issue of competency to stand trial during the defendant's arraignment, and the court ordered a mental competency examination pursuant to 18 U.S.C. §4244. *Id.* at 387. The defendant's competency was also an issue for the jury to decide regarding the defendant's insanity defense. *Id.* at 395-96.

The Michigan Court of Appeals here held that the circuit court did not abuse its discretion in failure to order a competency examination. (ECF No. 6-2, PageID.220). The circuit court determined that petitioner was capable of understanding the nature of the charges brought against him and capable of rationally assisting in his defense, despite petitioner's nonsensical statements and odd behavior. (*Id.*, PageID.221). Judge Cronin further determined that petitioner was "intelligent, articulate, and had an expansive vocabulary" and that petitioner acted "intentionally and purposefully, and not because of a mental condition or

illness, [] in a defiant and dilatory manner in an attempt to disrupt the proceedings and to show contempt and disrespect for the court and the criminal justice process." (*Id.*, PageID.220-21). The Court of Appeals found that this determination was reasonable and principled and that a reasonable judge, situated as the circuit court judge was, could logically have rejected the proposition that petitioner was incompetent. Additionally, the Court of Appeals deferred to Judge Cronin's determinations because Judge Cronin, and not the Court of Appeals, was able to personally observe petitioner's behavior, conduct, and statements. Finally, the Court of Appeals determined that defense counsel's failure to request a competency examination did not fall below an objective standard of reasonableness based on the findings of fact.

Petitioner did not provide a legal basis to support his argument, and failed to rebut by clear and convincing evidence the presumption that findings of fact are presumed correct. *See* 28 U.S.C. § 2254(e). The Michigan Court of Appeals' decision rejecting Ground III was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Accordingly, I find that Ground III does not provide a basis for granting petitioner's request for federal habeas corpus relief.

## IV. Double Jeopardy and Sufficiency of the Evidence

In Ground IV, petitioner argues that the Michigan Court of Appeals erred in its assessment of petitioner's Fifth Amendment double jeopardy claim by determining that certain counts were not meant to be alternative counts but rather that each count is a separate count, notwithstanding that one count of resisting, obstructing, or assaulting a police officer was vacated by the Michigan Court of Appeals. (Am. Pet. at 10, ECF No. 5, PageID.98; Pet. Brief at 25, ECF No. 6, PageID.143-50).

In *Blockburger v. United States*, the Supreme Court established a test to determine whether two crimes constitute the same offense for double jeopardy purposes. 284 U.S. 299, 304 (1932); s*ee also United States v. Dixon*, 509 U.S. 688, 696 (1993); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000). This same-elements test inquires whether "each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696. The application of this test focuses on the statutory elements of the offense. *See Gore v. United States*, 357 U.S. 386 (1958) (cited by *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). If there is a substantial overlap in the proof offered to establish each crime, the *Blockburger* test may still be satisfied if each offense requires proof of a fact or element that the other offense does not. *Iannelli*, 420 U.S. 770 at 785 n.17.

The Court of Appeals evaluated the substance of petitioner's claim, notwithstanding the procedural default of that claim, and found that the convictions passed the "same elements" test as articulated in *Blockburger*, 284 U.S. 299 (1932).

The Court also found that there was sufficient evidence to convict petitioner of all charges less one charge of resisting, obstructing, or assaulting a police officer. (Mich. Ct. Appeals Opinion, ECF No. 6-2, PageID.222). The Court of Appeals also notes that all seven counts were presented to the jury and were not presented in the alternative or as lesser included offenses.[9] (*Id.*).

In reviewing petitioner's double jeopardy claim, the Court of Appeals found that the resisting, obstructing, or assaulting a police officer charge under MICH. COMP. LAWS § 750.81d(1) differed from the refusing or resisting the collection of biometric data (fingerprints) under MICH. COMP. LAWS §28.243a in that the former had an assault element that the latter did not, the former had a *mens rea* element of knowledge of a police officer's involvement, and the latter required resistance of collection of biometric data specifically. (ECF No. 6-2, PageID.222). The charge of resisting, obstructing, or assaulting a police officer under MICH. COMP. LAWS § 750.81d(1) differed from the charge of assault of a jail employee under MICH. COMP. LAWS §750.197c(1) because the latter required proof that the defendant was lawfully imprisoned in a place of confinement and knowledge that the victim was a jail employee or custodian, whereas the former did not have the elements of confinement and involvement of a jail employee. (*Id.*). Finally, the Court of Appeals found that there was sufficient evidence to support two of the three counts of resisting,

---

[9] The charges against petitioner in the State court proceedings were: three counts of resisting, obstructing, or assaulting a police officer; two counts of assaulting a jail employee; one count of resisting the collection of biometric data; and one count of aggravated assault. (Am. Pet., ECF No. 6, PageID.120). The aggravated assault conviction is not at issue in this double jeopardy claim.

obstructing, or assaulting a police officer because petitioner engaged in acts of physical resistance against the police officers. One count was vacated for insufficient evidence due to a lack of physical resistance and resistance based only on refusal to provide petitioner's name, which is contrary to state law. (*Id.*).

While petitioner provides the prosecution's confession that the charges were meant to be alternative charges or lesser included charges as support for his argument, the seven charges were each presented to the jury and not given as instructions in the alternative. (Am. Pet., ECF No. 6 at 31, PageID.149). At the time of the trial, there were no objections to the jury instructions and charges presented. (Mich. Ct. Appeals Opinion, ECF No. 6-2). In affording deference to the Michigan Court of Appeals decision pursuant to 28 U.S.C. § 2254(e)(1), I find that the Michigan Court of Appeals decision was not contrary to clearly established federal law and was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d); *see also Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).

Accordingly, I find that Ground IV does not provide a basis for granting petitioner's request for federal habeas corpus relief.

## V.  Contempt of Court

In Ground V, petitioner argues that the Michigan Court of Appeals erred in upholding the contempt charge against the petitioner and not awarding resentencing

based on a violation of his right to free speech and allocution.[10] (Am. Pet. at 15, ECF No. 5, PageID.103; Pet. Brief at 33-35, ECF No. 6, PageID.151-53). First and foremost, there is no federal constitutional right to allocution. *Hill v. United States*, 368 U.S. 424, 428 (1962) (cited by *United States v. Coffey*, 871 F.2d 39, 40 (6th Cir. 1989)). Though the Federal Rules of Criminal Procedure provide the defendant and his counsel with the opportunity to allocate during sentencing, the case here was decided in the Michigan circuit court, subject to Michigan state laws for allocution, and the Federal Rules of Criminal Procedure did not apply. FED. R. CRIM. P. 32(i)(4)(A). Petitioner asserts his state right to allocution as provided in MICH. CRIM. P. 6.425(E)(1)(c); (Am. Pet., ECF No. 6, PageID.152-53) (citing *People v. Petty*, 469 Mich. 108, 1[0]9, 665 N.W.2d 443, 444-45 (Mich. 2003); *People v. Wells*, 605 N.W.2d 374 (Mich. Ct. App. 1999)). Purported violations of state law or court rules do not provide a basis for federal habeas corpus relief. *See* 28 U.S.C. §2254(a).

Accordingly, I find that Ground V does not provide a basis for granting petitioner's request for federal habeas corpus relief.

---

[10] The Court notes that the petitioner alludes to a violation of his right to free speech. (Am. Pet., ECF No. 6, PageID.151). However, no argument or legal basis was provided to support this claim, and, as such, any federal free speech and First Amendment claims are waived for not being properly pled and briefed. Purported violations of state law or state constitutional provisions do not provide a basis for federal habeas corpus relief. *See* 28 U.S.C. §2254(a). Even if this Court reviewed this case for a First Amendment violation, freedom of speech is not an unlimited right, and the constitution does not protect disruptive, contemptuous behavior in a courtroom. *See Cox v. Louisiana*, 379 U.S. 559 (1965) (cited by *People v. Warriner*, 317 N.W.2d 681, 684 (Mich. Ct. App. 1982)).

## VI.    Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should be issued if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of a certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that…jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong. Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits, and that petitioner be denied a certificate of appealability.

Date: August 29, 2017          /s/ Phillip J. Green
                              PHILLIP J. GREEN
                              United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen (14) days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).